Elizabeth D. Bullock
vs. } Eq. No. 2118
Isabella W. Lukens, et al.

March 5, 1928

BAKER, J. Final hearing.

This bill is brought for the specific performance of an alleged contract relating to the sale of certain residence property situated in the Town of Jamestown, the title to which property is in the name of the respondent Mrs. Lukens, the other respondent, her husband having merely his right of curtesy in the premises in question. The testimony in the case is not long, the greater part of it consisting of documentary evidence.

The complainant contends that a valid and binding contract complying with the provisions of the Statute of Frauds was duly entered into by the parties hereto and that she is en-

titled to the relief prayed for against both respondents.

The respondents, on the other hand, claim, first, that no contract or agreement of any kind was made by the parties; secondly, that if the Court should find that such a contract existed, it does not satisfy the Statute of Frauds; and, thirdly, that in any event, the complainant is not entitled to relief as to the respondent Mr. Lukens.

The testimony shows that during the negotiations involved in this proceeding, the complainant lived in Worcester, in the Commonwealth of Massachusetts, and the respondents in the city of Philadelphia. All of the negotiations relating to the sale in question were conducted through the real estate office of Mr. Knowles in the Town of Jamestown and covered the period during the months of January, February and March of the year 1926.

The respondents at the outset raise a question as to the agency of Mr. Knowles. They claim this is important in connection with the payment of a $500 deposit by the complainant. The complainant takes the position that in view of what took place, it is immaterial whose agent Mr. Knowles was.

After considering the matter carefully, the Court finds with the complainant on this point. In this connection, however, the Court will say that in its judgment, in relation to the matter now before it, Mr. Knowles was acting as the agent of the complainant. In so finding, the Court is not unmindful of the fact that the respondents were to pay Mr. Knowles the commission involved in the matter, nor of the fact that the respondents' property had been listed for rent and for sale purposes with him. It seems to the Court clear, however, after a consideration of the evidence and a reading of the exhibits, that in this

transaction Mr. Knowles was acting for the complainant. She does argue that he was the agent for both parties. It is true that the testimony shows he was the intermediary through whom all the business was transacted, but the law does not favor a situation in which a real estate agent acts for both parties involved, and the Court is satisfied here that such was not the situation.

It is disclosed by the evidence that the complainant first opened negotiations through Mr. Knowles in regard to the purchase of the property. Considerable preliminary correspondence was had and, finally, on February 25, the respondent Mrs. Lukens wrote a letter, Exhibit 23, which contained a definite offer of sale for $7500 cash, with certain conditions. Following certain counter offers made by the complainant, on March 3rd she by telegram, through Mr. Knowles, accepted the price of $7500 for the property, and on March 4th, by telegram and by letter from Mr. Knowles, Mrs. Lukens was informed that a check for $500 had been deposited with Mr. Knowles and that he would forward the same when the signed contracts were returned to him. On March 5th, Mrs. Lukens wired the Knowles Agency that when the check is drawn and endorsed by her, both parties are pledged by the terms of her letter, and asked that the complainant proceed at once if in earnest. Later on the same day March 5th, Mrs. Lukens sent to the Knowles Agency a postcard stating that their letter had been received since her telegram had been sent and that the method of procedure was satisfactory to her (Exhibit 35). Following this, duplicate contracts were sent to Mrs. Lukens on March 8th. These were returned on March 12th by her to the Knowles Agency for certain corrections. She also at the same time informed them

of her husband's name in order that it might be used in preparing the deed. On March 17th, the corrected contracts were forwarded to Mrs. Lukens. On March 19th, she asked that the deed be sent to her at once so that she could get her husband's signature to both contract and deed at the same time. This letter was acknowledged by the Knowles Agency on March 20th. On March 21st, the deed was sent to Mrs. Lukens. On March 22nd, she writes that she was waiting for the deed in order to decide the date of the final settlement. Then, on the 24th of March, Mr. Knowles received from Mrs. Lukens a telegram, stating that she had received a better offer for the property and that she could not sell for less than $10,000, and asked if the complainant would meet this price. Thereafter, there followed a series of correspondence in which the parties endeavored to make their respective positions clear to each other, and eventually the present suit was brought by the complainant.

The first question presented is as to whether or not there was a definite agreement or meeting of the minds of the parties as revealed by their negotiations carried on by letter and telegram through the Knowles Agency in Jamestown.

After a careful consideration of all the oral testimony, and the documentary evidence as shown by the exhibits on this point, the Court finds that the parties did come to a definite contract or agreement relating to the sale of the property in question. There was no dispute as to the rest. The price to be paid therefor was agreed upon, the sellers and the purchaser were definitely ascertained and the other material points of the contract were agreed to. The following exhibits perhaps can be referred to specifically: Exhibit 23, Exhibit 30, Exhibit 33 and Exhibit 35. It seems to the Court that the conduct of both parties after March 5th showed that they understood and realized that their minds had met and that a contract had been entered into. The complainant certainly so believed. As regards Mrs. Lukens, she suggested alterations in the written contract, she carried on correspondence in regard to the contract and the forwarding and execution of the deed, and it seems to the Court that her whole course of conduct shows beyond any question that up to late March she fully considered herself bound by what had taken place. She now contends that her offer contained in her letter of February 25th required that the payment of $500 in cash be made to her, and that as Mr. Knowles was not her agent, the payment of that sum to him did not constitute in any way payment to her. While it is true that this was a part of her orginal offer and was embodied in her telegram of March 5th to the Knowles Agency, nevertheless, the Court finds that her postcard of March 5th, immediately following the sending of the previous telegram, in which she stated that Mr. Knowles' method of procedure in regard to the check and the contracts was satisfactory to her, constitutes clearly a waiving of her requirement that the $500 in cash be paid directly to her and practically constitutes an acceptance of a counter offer or suggestion made by Mr. Knowles to her in his telegram and letter of March 4th. The Court is not able to accept the respondents' construction placed upon the language used on said postcard. The ordinary and common use of the language there employed appears to the Court to clearly mean that Mr. Knowles' action in preparing the contracts and in holding the check for $500 was entirely acceptable to her. See, too, the letter Exhibit 41.

The respondents next argue in con-

nection with the contract that the parties did not intend to be bound and that no definite agreement was to be considered as binding until the written contract above referred to was signed.

It is clear from the authorities that the question here raised is entirely one of intention.

> Mississippi &c. S.S. Co. vs. Swift, 86 Me. 248; Pomeroy on Specific Performance of Contracts, 3d ed. pp. 160 & 164.

If the evidence shows that the parties finally agreed to terms which later were merely to be embodied in a formal document, then the contract is binding in the first instance whether any such document is drawn or not. That is the complainant's contention here.

On the other hand, the respondents claim that the facts and the evidence show that no one was to be bound until the written contract was prepared and signed.

An examination of the testimony and the exhibits relating to this question leads the Court to believe that in this case the drawing of the contract was merely a formal matter and that the parties had already agreed to terms which constituted a contract between them. In other words, in the judgment of the Court in this case the written contract was more or less of a formality. Apparently, its first suggestion came from Mr. Knowles, the agent.

A consideration of the actions and the language used by the parties leads the Court to find that they fully considered themselves bound by a definite agreement prior to the signing of any such written paper. In this connection, as bearing upon the intention and state of mind of the respondent Mrs. Lukens, the Court may refer to Exhibit 79, a telegram she sent about March 7th to Mr. Meredith, another real estate agent in Jamestown, from whom she later received the $10,000

offer, in which telegram she said: "Rock Rest sold. Sorry you were too late." (See also Exhibit 73.) Apparently at that time she considered the sale of her property consummated and the matter closed. Further, it was her suggestion that the deed and the contract be forwarded to her and signed at the same time. Apparently the truth of the matter is that a few days after Mrs. Lukens made her definite offer to sell the property to the complainant, she received certain inquiries from Mr. Meredith. Some correspondence passed between them, Mrs. Lukens keeping the matter alive, although she had previously wired and written Mr. Meredith that her property had been sold. Her explanation of this is that she was not sure whether the complainant was going through with the matter and whether she was in earnest.

The Court has some doubt as to whether this is the true explanation of the situation. Mrs. Lukens at certain places in her testimony was rather evasive and was not, to the Court's mind, a particularly satisfactory witness.

Finally, on March 20th, she received from Mr. Meredith an offer of $8,000.00. This she refused (Exhibits 74 and 75). Apparently, there was not enough difference between this offer and the complainant's offer to attract her. On March 22nd, however, Mr. Meredith offered $10,000 for the property and this clearly, in the opinion of the Court, is the one chief fact which caused Mrs. Lukens to desire to dispose of her property through Mr. Meredith and not to the complainant.

Finally, the respondents claim that even if there was a contract between the parties herein, as the Court has found, such contract was not sufficient to satisfy the Statute of Frauds.

It clearly is the law that a contract relating to the sale of real estate does not necessarily have to be in one document, but, if sufficiently clear as to its

terms, may be binding in the form of a series of documents or a series of letters and telegrams such as appear here in the case at bar.

Pomeroy on Specific Performance of Contracts, 3rd ed. pp. 200 & 201; 205 & 206.

The respondents urge in particular that the time and place for the payment of the balance of the purchase money is not set out sufficiently clearly.

The Court does not believe this claim is tenable. In Mrs. Lukens' letter of February 25th (Exhibit 23), apparently the money was to be paid when the deed was passed, April 1st or 2nd. Further, it seems to the Court a reasonable construction of all the correspondence and of the conduct of the parties, that the office of Mr. Knowles in Jamestown was to be the place where the transaction was to be consummated.

The courts in this State have very frequently discussed the matter of the Statute of Frauds in connection with contracts relating to the sale of real estate, and it seems to the Court that the contract in the case at bar, appearing as it does on various letters and telegrams signed by the parties or their agents, identifies the land to be sold, the price to be paid for it, the parties to sell the land, and the one to pay for it and receive it.

Thornton vs. Kelly, 11 R. I. 498;
Sholovitz vs. Noorigian, 42 R. I. 282.

In the opinion of the Court, the contract in this case satisfies the Statute of Frauds as construed by the Courts of this State.

The one remaining and most difficult question to determine is whether or not relief should be granted against the respondent William W. Lukens.

Regardless of the determination of this question, it is very clear that in this State a complainant in the situation of the complainant in the case at bar has the right to take a decree dis-

missing the bill without prejudice to the right to bring an action for damages or to take a decree providing for specific performance against the person bound, namely, the respondent Mrs. Lukens in this case, with a deduction from the purchase price for the present value of the outstanding right of curtesy in her husband, the respondent Mr. Lukens.

Ives vs. Hazard, 4 R. I. 14;
Lederer vs. Rosen, 43 R. I. 315;
Najadian vs. Boyajian, 136 Atl. 767 (R. I.).

A rather difficult question of fact is presented on the point as to whether or not Mrs. Lukens can be considered as acting for Mr. Lukens in this matter so as to bind him. He personally took no part in the negotiations. It appears from the testimony that he lives in Philadelphia with his mother and is an invalid. He is not under guardianship, however, and is apparently capable of transacting business and on good terms with his wife. He has given no testimony in this case, either directly or by way of deposition, as bearing upon the question relating to the performance of this contract or his position in connection therewith. In such a case as this, it seems clear that authority need not be expressly given but may be implied from the conduct and relationship of the parties and may be implied between husband and wife.

It is quite evident to the Court, in reading between the lines of Mrs. Lukens' testimony, that she was conducting and looking out for the family affairs, and that her husband had little or nothing to do about them. No question was raised during the negotiations about any difficulty in obtaining Mr. Lukens' signature to the deed. In fact, on March 12th (Exhibit 41) Mrs. Lukens gave Mr. Knowles her husband's name so that he could insert it in the deed, and later she requested that the deed and contract be for-

warded together so that it would be easier to get both papers signed at once, as Mr. Lukens was an invalid. Each case of this type has, of course, to be decided upon its peculiar facts, and the Court, after considering the matter carefully, has come to the conclusion that the respondent Mrs. Lukens was acting as agent for her husband in this matter and that the complainant ought to be entitled to the relief prayed for against the respondent Mr. Lukens.

In conclusion, therefore, the Court finds that there was a binding contract entered into by the parties herein; that this contract satisfies the provisions of the Statute of Frauds of this State, and that the complainant is entitled to the relief she prays for against both respondents.

The material issues of fact, in the judgment of the Court, have been answered herein.

The prayers of the complainant's bill are granted.

For complainant: Edwards & Angell.

For respondent: Burdick & MacLeod.